**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PRESERVATION SOCIETY OF NEWPORT COUNTY,<br>424 Bellevue Ave.<br>Newport, RI 02840,<br><br>Plaintiff,<br><br>v.<br><br>DEB HAALAND, in her official capacity as Secretary of the Interior, U.S. Department Of the Interior<br>1849 C St., NW<br>Washington, DC 20240; and<br><br>U.S. DEPARTMENT OF THE INTERIOR,<br>1849 C St., N.W.<br>Washington, DC 20240; and<br><br>BUREAU OF OCEAN ENERGY MANAGEMENT,<br>1849 C St., N.W.<br>Washington, DC 20240,<br><br>Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**<br><br>Case No. 1:23-cv-3513 |

## INTRODUCTION

1. The Preservation Society of Newport County, the steward of some of America's most treasured places, charged with protecting the National Historic Landmarks of Newport County for generations of residents and visitors to enjoy, brings this appeal. Newport's globally recognized National Historic Landmarks face the prospect of over 500 highly visible offshore wind turbines that will industrialize Newport's iconic Atlantic Ocean views for at least the next thirty years. Each turbine rises to nearly three times the height

of the Statue of Liberty and taller than an 80-story skyscraper. Proposed projects will inflict severe and long-lasting effects on the character, community, and heritage-tourism-driven economy of Newport, including historic properties that depend on this economy for their preservation activities. The Bureau of Ocean Energy Management (BOEM) is the federal agency responsible for ensuring balance between offshore development and harm to environmental and historic resources. Despite acknowledging the industrialized wind farms' adverse impacts, BOEM, has succumbed to intense political pressure to conduct a sham consulting process with numerous skipped steps and foregone conclusions, shirking its responsibility to the public and allowing corporate energy developers to set the terms for permitting. Given the speed with which BOEM is conducting offshore wind permitting, these failures, if left uncorrected, will set lasting and deeply harmful precedent by gutting the protections that Congress intended for environmental and cultural resources facing impacts from all forms of development.

2. This is an action for declaratory and injunctive relief appealing the failure of BOEM, an agency within the U.S. Department of the Interior, to comply with the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 et seq., and National Historic Preservation Act (NHPA), 54 U.S.C. §§ 100101 et seq. in its permitting review of Revolution Wind Farm (Revolution), a proposed wind farm off the coast of Rhode Island.

3. Notwithstanding repeated calls from the Preservation Society of Newport County and others for BOEM to correct errors in its application of NEPA and the NHPA, BOEM proceeded to authorize Revolution based on a deeply flawed analysis that cut out the Preservation Society of Newport County and communities within Newport County from ways to avoid, minimize, or mitigate the harm that Revolution is expected to cause.

4. For the reasons set forth below, BOEM failed to comply with federal law because it failed to take a hard look at environmental impacts and failed to resolve adverse effects to historic properties. Therefore, BOEM's Record of Decision was arbitrary, capricious, and not in accordance with law in violation of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551, et seq. Accordingly, BOEM's decision should be vacated and remanded to BOEM for further consideration and for other relief that the Court deems appropriate as more fully set forth below.

**JURISDICTION AND VENUE**

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), § 1346 (United States as a defendant); and 5 U.S.C. §§ 701-706 (Administrative Procedure Act or APA).

6. For all claims brought under the APA, Plaintiff challenges a final agency action and has exhausted all administrative remedies.

7. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(A) where Defendants are agencies of the United States that reside in this judicial district.

**PARTIES**

8. Plaintiff Preservation Society of Newport County (Preservation Society), headquartered at 424 Bellevue Avenue; Newport, RI, is Rhode Island's largest cultural organization. It was founded in 1945 to protect Newport County's architectural heritage. At all times relevant to this Complaint, the Preservation Society owns and stewards historic properties within one of the National Historic Landmark Districts that Revolution will adversely

affect. Seven of its historic properties and are National Historic Landmarks and are connected by context to their oceanfront landscapes.[1]

9. Defendant Deb Haaland is the Secretary of the U.S. Department of the Interior and is responsible for overseeing the nation's Outer Continental Shelf lands and oceans, including all lease areas selected for offshore wind energy development. Secretary Haaland oversees BOEM and is ultimately responsible for BOEM's decisions. Secretary Haaland is sued in her official capacity as Secretary of the Interior.
10. Defendant U.S. Department of the Interior is an agency of the federal government that plays a central role in how the United States stewards its public lands and waters, increases environmental protections, and pursues environmental justice. The Department of the Interior is authorized to grant a lease, easement, or right-of-way on the Outer Continental Shelf for activities that produce or support the production of energy from oil, gas, and other sources, including offshore wind energy production.
11. Defendant BOEM is a federal agency within the Department of the Interior that oversees the energy development of the Outer Continental Shelf, including oversight of offshore wind energy lease areas. At all relevant times, BOEM, as the federal lead agency, supervised as the federal lead agency the environmental review for the wind farms at issue in this appeal and issued the Record of Decision.
12. At all times relevant to this Complaint, the Plaintiff participated as a Consulting Party for purposes of BOEM's NHPA and NEPA reviews.

**BACKGROUND**

---

[1] National Historic Landmarks are historic properties that illustrate the heritage of the United States and represent an outstanding aspect of American history and culture. The National Park Service administers the National Historic Landmarks Program.

**Legal Framework**

13. Congress passed NEPA to "promote efforts which will prevent or eliminate damage to the environment."[2]

14. NEPA requires federal agencies, such as BOEM, take a "hard look" at the environmental consequences of major federal actions that significant affect the natural and human environment, including historic and cultural resources, before issuing a decision that will allow the action to occur.

15. Prior to issuing a Record of Decision, the final step in NEPA review, agencies demonstrate compliance with NEPA through the preparation and issuance of a Final Environmental Impact Statement (EIS), which must analyze and disclose a proposed project's environmental consequences, including all direct, indirect, and cumulative effects.

16. If the EIS identifies a significant effect, the EIS must also propose and analyze "appropriate mitigation measures."[3]

17. Congress enacted the NHPA in recognition of development threats to the nation's irreplaceable historic properties—happening with increasing frequency—which include buildings, sites, objects, and their associated landscapes because of their connection to our sense of orientation as a community and identity as an American people.[4]

18. Section 106 of the NHPA thus requires that federal agencies having authority to license any undertaking shall, prior to the issuance any permit or license "take into account the

---

[2] 42 U.S.C. § 4331.
[3] 40 C.F.R. § 1502.14.
[4] Section 1 of the NHPA, Pub. L. No. 89-665, amended by Pub. L. No. 96-515.

effect of the undertaking on any historic district or property."[5] Furthermore, the agency "shall afford the Advisory Council on Historic Preservation . . . a reasonable opportunity to comment with regard to such undertaking."[6]

19. The goal of Section 106 consultation is "to identify historic properties potentially affected by the undertaking, assess its effects, and find ways to avoid, minimize or mitigate any adverse effects on historic properties."[7]

20. Section 110(f) of the NHPA applies a heightened level of Section 106 review and requires federal agencies to consult with the National Park Service on adverse effects to National Historic Landmarks and "use all possible planning to minimize harm" to those properties.

**Factual Background**

**Newport's Historic and Cultural Resources**

21. The City of Newport and other communities within Newport County are illustrative of the traditional, historic relationship that historic ocean-facing communities continue to maintain to their pristine ocean settings.

22. These communities are unique in the nation due to their high concentration of historic and culturally significant resources.

23. Offshore wind farms' massive turbines with their associated transmission stations—will despoil ocean views to and from hundreds of historic properties along the coastline, including some of the nation's most significant National Historic Landmarks.

---

[5] 54 U.S.C. § 306180; 36 C.F.R. §800.1(c).
[6] *Id.*
[7] 36 C.F.R. § 800.1(a).

24. Because this region is critical to our nation's history and our citizens' understanding of this history, Congress, federal agencies, state agencies, local governments, advocacy organizations—including the Preservation Society—and private property owners have for more than a century taken myriad steps to conserve this region and protect its integrity by maintaining the landscape in a pristine condition for the American public to enjoy.

25. The Department of the Interior has previously promoted these nationally important objectives through designation of National Historic Landmarks, registration of properties in the National Register of Historic Places, and recognition of properties as cultural landscapes.

26. As BOEM has recognized, Newport is one of the most spectacular assemblages of American architecture from its beginning to our own time. There are structures in this district that could never be built again in such close proximity, nor possessing such variety, nor by a group of such distinguished architectural firms.

27. Newport is inseparable from the ocean – in fact, Rhode Island is known as the Ocean State and Newport as the City-by-the-Sea. Newport's connections to the sea have inspired not only writers and other artists, but also families which have treasured and preserved their oceanside homes and history for hundreds of years. In addition to numerous National Historic Landmark homes built to take advantage of proximity to the ocean, other historic sites whose importance depend on unobstructed ocean views include Newport's Cliff Walk, Brenton Point and Sachuest National Wildlife Refuge. Newport has also been called the Sailing Capital of the World, but unobstructed waters, centuries of nautical history, and world-class racing history in the America's Cup and Volvo Ocean

races would all be compromised by ill-placed wind farms resulting from faulty permitting.

**Revolution Wind Farm**

28. Revolution Wind (Revolution) is a proposed utility-scale offshore wind farm project on the Outer Continental Shelf offshore Rhode Island with export cables connecting to the onshore electric grid in North Kingstown Rhode Island. It will be constructed within the OCS-A 0486 Lease Area. The 100-turbine wind farm will be constructed 15 miles southeast of Rhode Island's Block Island and Southeast Lighthouse. Revolution's wind turbines will be 873 feet tall.
29. Revolution is adjacent to two other projects proposed by the same developer and simultaneously under BOEM's review, South Fork Wind and Sunrise Wind, as well as other proposed wind farms. South Fork Wind will have up to 12 turbines at 840 feet tall and Sunrise Wind will have up to 122 turbines at 968 feet tall.
30. Revolution's visual effects, along with those of its related projects, South Fork Wind and Sunrise Wind, are expected to harm the integrity of historic properties by creating an industrialized viewshed that will despoil pristine views of the Atlantic Ocean.
31. The construction of wind farms is highly controversial because they threaten the many decades of consistent efforts by Congress, federal agencies, state agencies, local governments, advocacy groups, and private property owners to construct, protect, and preserve historic properties within the context of unspoiled landscapes and viewsheds.
32. Revolution and other reasonably foreseeable wind farms will disrupt historic connections and uninterrupted views of Newport's historic properties to the ocean and harm their historic oceanfront context that has existed for centuries.

33. Revolution's developer, Ørsted, has conducted studies that show communities will suffer significant harm to their local economies, yet BOEM did not consider those studies.

**BOEM's Conduct**

34. Although BOEM is the lead federal agency for offshore wind farm permitting and has the chief responsibility for ensuring that Revolution complies with all federal environmental laws, BOEM continued its pattern of noncompliance established with South Fork Wind, again treating the environmental and historic review into a pretext for a predetermined outcome.

35. Although BOEM is the lead federal agency for offshore wind farm permitting and has the chief responsibility for ensuring that South Fork complies with all federal environmental laws, BOEM set a precedent with its review of South Fork that established a pattern of noncompliance for permitting processes for all offshore wind farms now under federal review.

36. As part of its pattern of noncompliance, BOEM has failed to provide adequate notification to local governments and property owners with demonstrated interests in Revolution and other offshore wind projects, and then failed to consult with them or consider their views; failed to consult meaningfully with tribes and ignored their concerns; failed to identify historic properties; failed to prepare adequate visual simulations so that the public will understand Revolution's and other wind farms' actual visual effects; failed to consider economic impacts to historic properties, including property values and lost tourism revenue, and failed to assess economic impacts to local economies, forcing local communities to "take it or leave it" and absorb Revolution's externalities, in violation of the letter and spirit of environmental and historic

preservation permitting laws; failed to consider cumulative effects of all reasonably foreseeable wind farms, including those already under its review, which will magnify exponentially the adverse effects of Revolution; and failed to comply with heightened levels of review required to protect National Historic Landmarks, such as the Bellevue Avenue, Ocean Drive, and Ochre-Point-Cliffs Historic Districts, as well as individually designated National Historic Landmarks within those districts, such as The Breakers, Marble House, and Rosecliff because it did not use all possible planning to minimize harm, but instead has chosen to rely on Revolution's consultants and ignore the concerns of consulting parties.

**CLAIMS FOR RELIEF**

37. Plaintiff incorporates previous allegations as if set forth herein.

**FIRST CLAIM FOR RELIEF**

**(BOEM'S Violation of NEPA and the APA)**

38. Plaintiff incorporates previous allegations as if set forth herein.

39. NEPA requires federal agencies to fully consider and disclose the environmental consequences of any agency action before proceeding with that action. The Advisory Council on Historic Preservation's regulations require early coordination of NHPA review with NEPA.[8]

40. BOEM's authorization of Revolution was a federal action.

[8] 36 C.F.R. § 800.8.

41. BOEM has violated NEPA and its implementing regulations by issuing a Record of Decision for Revolution and by approving the Final EIS, despite the Final EIS's procedural and substantive defects.

42. BOEM failed to comply with NEPA by failing to consider all direct, indirect, and cumulative impacts of Revolution on the environment and historic properties.

43. BOEM's authorization has the likelihood to significantly affect the quality of the human environment by altering the nation's historic landscapes, harming other historic and cultural resources, and harming local economies, including those of the City of Newport and other communities within Newport County, including those owned by the Preservation Society, as well as the historic properties within those communities that depend on tourism revenue to support their continued maintenance and future preservation.

44. BOEM failed to adequately consider or resolve the cumulative effects of Revolution because it failed to consider how other reasonably foreseeable offshore wind farms developed by Ørsted, including South Fork Wind and Sunrise Wind, among others, would adversely affect historic resources in the City of Newport and in communities within Newport County.

45. BOEM's refusal to consider the effects of South Fork Wind and Sunrise Wind amounted to illegal segmentation of Revolution from other reasonably foreseeable and related offshore wind projects to avoid a comprehensive environmental review.

46. Once information became available about Revolution Wind and Sunrise Wind Construction and Operations Plans and associated technical reports, including visual

impact assessments, BOEM had a duty to reopen its NEPA review and prepare a Supplemental EIS, but failed to do so.

47. BOEM's authorization of Revolution without NEPA compliance was arbitrary, capricious, and contrary to law.

48. As a result of BOEM's actions and absent injunctive and declaratory relief, Plaintiff's interests in historic, cultural, and other resources have been and will continue to be harmed.

**SECOND CLAIM FOR RELIEF**

**(BOEM's Violation of Section 106 of the NHPA and APA)**

49. Plaintiff incorporates previous allegations as if set forth herein.

50. Section 106 requires federal agencies to complete the Section 106 review process "prior to the approval" of the federal undertaking.[9]

51. Revolution is a federal undertaking and therefore subject to Section 106 of the NHPA.

52. BOEM failed to conduct adequate visual simulations of Revolution and its direct, indirect, and cumulative effects.

53. BOEM inaccurately assessed and failed to resolve adverse effects, including cumulative effects, to all historic properties in the City of Newport, including those owned by the Preservation Society, and other communities within Newport County as Section 106 requires.

54. In purported compliance with Section 106, BOEM executed a Memorandum of Agreement (MOA) that failed to resolve adverse effects to all historic properties within

---

[9] 54 U.S.C. § 306180; 36 C.F.R. § 800.1(c).

the City of Newport and other communities within Newport County, adopting "Historic Property Treatment Plans" that purport to resolve adverse effects, which violates Section 106's requirement that adverse effects be avoided, minimized, or mitigated prior to approval of the undertaking.

55. BOEM also failed to invite and consult with all individuals or organizations that would assume a specific role or responsibility under the MOA and Historic Property Treatment Plans.

56. Authorizing the project without Section 106 compliance was arbitrary, capricious, and contrary to law.

57. As a result of BOEM's actions and absent injunctive and declaratory relief, Plaintiff's interests in historic, cultural, and other resources have been and will continue to be harmed.

**THIRD CLAIM FOR RELIEF**

**(BOEM'S Violation of Section 110(f) of the NHPA and APA)**

58. Plaintiff incorporates previous allegations as if set forth herein.

59. Section 110(f) requires that BOEM use all possible planning to minimize harm to National Historic Landmarks.

60. BOEM failed to comply with Section 110(f)'s heightened standard of review for National Historic Landmarks by not engaging in all possible planning to minimize harm because it never considered alternative lease areas that would not have created adverse visual effects, failed to conduct adequate visual simulations, failed to assess all adverse effects, including cumulative effects, and failed to resolve adverse effects to all National Historic Landmarks, including the City of Newport's Bellevue Avenue Historic District, Ocean

Drive Historic District, Ochre Point-Cliffs Historic District, and individually designated National Historic Landmarks within those districts.

61. In purporting to comply with Section 110(f), BOEM failed to properly consult with the National Park Service over ways to minimize harm, relying instead on the mitigation measures it developed for NEPA and Section 106 purposes, even though NEPA and Section 106 has a lower standard of review than Section 110(f) requires.
62. Authorizing the project without Section 110(f) compliance was arbitrary, capricious, and contrary to law.
63. As a result of BOEM's actions and absent injunctive and declaratory relief, Plaintiff's interests in historic, cultural, and other resources have been and will continue to be harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

1. Declare that BOEM's approval of the Revolution Record of Decision, including the Final EIS, violates NEPA and NEPA's implementing regulations;
2. Declare that BOEM violated its duty to comply with Section 106 of the NHPA and its implementing regulations by failing to resolve adverse effects;
3. Declare that BOEM violated its duty to comply with Section 110(f) of the NHPA and its implementing regulations by failing to use all possible planning to minimize harm to the Plaintiff's historic properties as well as those within the City of Newport and communities within Newport County;
4. Order BOEM to set aside the Record of Decision that it issued for Revolution and prepare a new EIS;

5. Order BOEM to set aside the MOA issued to conclude the consultation required by Section 106 of the NHPA and re-start consultation;
6. Declare that BOEM violated Section 110(f) of the NHPA by failing to consult adequately with the National Park Service and not conducting all possible planning to minimize harm to National Historic Landmarks, including the Bellevue Avenue and Ocean Drive Historic Districts, Ochre Point-Cliffs Historic District, and individual National Historic Landmarks within those districts;
7. Pending BOEM's completion of a revised EIS and Record of Decision and completion of a legally adequate Section 106 and Section 110(f) process, enjoin BOEM from allowing any construction activities to continue that may have already commenced;
8. Declare that BOEM's permitting review was a pretext for a predetermined outcome and order supplemental discovery;
9. Grant Plaintiff such temporary restraining orders or preliminary or permanent injunctions as it may request;
10. Retain jurisdiction of this action to ensure compliance with its decree;
11. Award Plaintiff its fees, costs, expenses, and reasonable attorneys' fees as provided by 28 U.S.C. § 2412 and 54 U.S.C. § 307105, and expert witness fees;
12. Grant Plaintiff additional relief as the Court deems appropriate.

Respectfully submitted this 22nd day of November, 2023.

/s/ William J. Cook, Bar No. SC0009
CULTURAL HERITAGE PARTNERS, PLLC
2101 L Street, NW; Ste. 300
Washington, DC 20037
Tel: (202) 567-7594
Fax: (866) 875-6492

Email: will@culturalheritagepartners.com

Jessica R. G. Krauss, Bar No. VA162
CULTURAL HERITAGE PARTNERS, PLLC
2101 L Street, NW; Ste. 300
Washington, DC 20037
Tel: (202) 567-7594
Email: jessica@culturalheritagepartners.com

Gregory A. Werkheiser (pending admission *pro hac vice*)
CULTURAL HERITAGE PARTNERS, PLLC
1811 East Grace Street, Ste. A
Richmond, VA 23223
Tel: (202) 567-7594
Email: greg@culturalheritagepartners.com

COUNSEL FOR PLAINTIFF